# Exhibit 1

Declaration of Stacie Greskowiak McNulty

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JONATHAN ZOU, OLIVER KOZLER, ALICE ELLIOTT, CHRISTIAN GRANT, and GABRIEL VIEIRA,

    Plaintiffs,

v.

SANTA J. ONO, in his official capacity as President of the University of Michigan; GEOFFREY CHATAS, in his official capacity as Executive Vice President and Chief Financial Officer of the University of Michigan; EDDIE L. WASHINGTON, in his official capacity as Executive Director of the University of Michigan's Division of Public Safety and Security; and CRYSTAL JAMES, in her official capacity as Chief of Police for the University of Michigan Police Department,

    Defendants.

Case No.

Hon.

## DECLARATION OF STACIE GRESKOWIAK MCNULTY

I, Stacie Greskowiak McNulty, make this statement under penalty of perjury of the laws of the United States and if called to testify I could and would do so competently based upon my personal knowledge as follows:

1

**My Role Representing Pro-Palestine Protestors**

1. I am an attorney and solo practitioner based in Ann Arbor, Michigan. I am an active member in good standing of the State Bar of Michigan, and my license number is P84421.

2. Since approximately February 2024, I have volunteered as an attorney for student protesters at the University of Michigan (the "University") in Ann Arbor. During this time, myself and other volunteer attorneys have worked together to represent University students, alumni, and local community members that have been subject to arrest, student disciplinary proceedings, trespass citations banning them from campus, and criminal prosecution for their participation in pro-Palestine protests.

3. I have personally advised and represented individuals in over a dozen discrete legal matters related to various notable protests on the University's campus, including in student disciplinary arbitrations and appeals, criminal prosecutions, and administrative appeals of campus trespass bans.

4. As a volunteer attorney I have advised and represented at least four individuals in connection with campus trespass ban citations issued by the University of Michigan Police Department ("UMPD") for their participation in campus protests. My work in relation to the trespass bans has included advising individuals on their options to appeal the trespass ban, corresponding with UMPD administrators on their behalf, and attending formal trespass appeal hearings.

5. The following statements about the University's trespass bans, its issuance of trespass ban citations, and the process of appealing trespass bans before UMPD are based on my personal experiences with my clients.

**The University's Trespass Bans**

6. Through my representation of protesters at the University, I have learned that UMPD officers, acting under the authority granted by the President of the University, have issued campus trespass ban citations to many pro-Palestine protesters in relation to notable protests that have taken place on campus. Several clients and students that I have advised have been issued trespass ban citations by UMPD in connection with various protests on campus.

7. I am aware that UMPD officers utilize a form trespass ban citation titled "University of Michigan Trespass Warning." I have reviewed trespass ban citations issued to my clients, and also understand that similar trespass citations have been issued to others in connection with pro-Palestine protests on the University's campus.

8. Although UMPD's trespass citation form is characterized as a "warning," it does not operate like a warning. Once the UMPD officer makes the determination to

issue a campus trespass citation in the first instance—which typically takes place during or shortly after a protest—the trespass ban is effective immediately and the person is banned from all University buildings and land, or from specified campus locations as identified in the specific trespass citation.

9. My clients that received trespass bans, as well as other recipients of similar trespass bans, were not provided with notice of the grounds for issuance of the trespass ban, or any opportunity to be heard or contest evidence against them before they were immediately deprived of their rights to access the campus. These failures occurred both in connection with the issuing officer's first instance determination and issuance of the trespass citation, as well as in connection with the formal appeal procedures before UMPD.

10. An issued trespass citation will include the name of the UMPD officer that made the initial determination to issue the trespass ban to the named recipient. However, the UMPD officer that issued and signed my client's trespass citations did not disclose on the citation form (or to my clients in any other manner) the specific grounds for the decision to issue the trespass ban, the standards by which their determination was made, or any particular allegations of wrongful conduct by my client. The named issuing officer was not made available to answer questions or provide information during any of the formal trespass appeal hearings that I have attended with my clients.

11. UMPD's trespass citation forms include a "reason" section that includes four check-boxes with corresponding text that describes a generalized, nonspecific ground for issuing the trespass ban, but the forms do not contain any lines or spaces for the issuing officer to provide specific information about the named individual or their alleged wrongful conduct.[1] Despite including a "reason" check-box with boilerplate language, the citation form does not identify for the recipient information such as, *e.g.*, the specific crime the recipient committed or is suspected of committing against a person or property, the specific "established University rule" protecting persons or property that the recipient allegedly violated, or the specific risk of harm or injury to a person or property demonstrated by the recipient.

12. Despite specifically requesting an incident packet and any relevant reports from UMPD in connection with the "formal appeal" process for one of my client's trespass citation banning him from the entire University campus, I was informed in an email that UMPD, as a policy, would not provide any documents or materials relating to a trespass citation, even in connection with the trespass appeal process.

---

[1] The reasons listed on the University's form trespass citation are that the named recipient: (i) committed/is suspected of having committed a crime on campus against persons or property, (ii) failed to comply with established University rules for protecting the health/safety of persons or property, (iii) disrupted the operations/lawful functions of the University, and/or (iv) demonstrated a risk of physical harm/injury to persons or property.

3

**UMPD's Trespass Bans and Escalating Enforcement**

13. Based on my representation and advising of University students, I understand that UMPD officers have issued trespass citations to individuals on many occasions as a part of their response to pro-Palestine protests. Since the University begain utilizing trespass ban citations to ban protesters from campus in November of 2023, their approach has escalated and expanded in scope and intensity.

14. The University's first use of campus trespass bans against students in connection with pro-Palestine protests on campus was in connection with a protest at the Ruthven building on November 17, 2023. I understand that approximately 40 students were issued trespass ban citations in connection with the Ruthven protest, and that the scope of the campus bans were limited and only banned recipients from the Ruthven building and not other locations on campus. The trespass citations forms stated that the ban would be effective for one year, unless extended for cause.

15. In the following spring of that same 2023-2024 academic year, UMPD issued trespass ban citations to protesters that were broader in scope. Based on my experiences with my clients and other students I have represented, I understand that in March of 2024 UMPD officers issued trespass ban citations to student protesters in connection with a protest that at Hill Auditorium. I understand that the scope of these trespass bans prevented the recipients from a broader set of University buildings that typically host large-scale meetings and community events, including football games, Regents meetings, student and faculty government meetings, graduations, cultural performances, and speaker series.

16. I understand, based on my experiences with my clients and other students I have represented, UMPD officers issued trespass ban citations to protesters on May 21, 2024, in connection with the University's forceful clearing of a peaceful pro-Palestine student encampment that had existed on the Diag for approximately one month.

17. As an Ann Arbor resident and an alumna of the University, I am familiar with the Diag and have visited it on numerous occasions. The Diag is an outdoor space in the middle of central campus where students and community members meet, organize, and share information, and where University and community events often take place. I am familiar with the Diag's rich history of marches, demonstrations, and conscience-driven student protests related to many important historical movements, including protests against apartheid in South Africa, the Black Action Movements for racial equality on campus, and more recently in connection with the Black Lives Matter movement, and protests against fascism, the University's treatment of sexual assault survivors, and police brutality against people of color.

18. I understand that the trespass citations issued by UMPD on May 21, 2024 were extremely broad in scope, and banned recipients from the entire University campus,

4

including the Flint and Dearborn campuses, and also all land and buildings leased or owned by the University. These trespass bans, which were effective immediately upon issuance, would immediately prevent a student recipient from attending classes, going to the library, and fulfilling work-student obligations, or risk arrest and criminal prosecution.

**The Trespass Ban Appeal Process**

19. I have advised various clients in connection with their options related to appealing trespass ban citations, and have attended in-person formal appeal "hearings" for trespass citations issued to three different clients.

20. A recipient of a trespass citation issued by UMPD has the opportunity to appeal the issuance of the ban. The backside of the trespass citation form states that a person may appeal the issuance of the trespass ban, and describes the process for contesting and appealing the issuance of a trespass ban.[2]

21. The process of appealing the issuance of a trespass ban is also described on the University's website.[3] The website states that there are two levels of appeals available for a trespass ban. The first level involves objecting to the ban and requesting a "formal hearing" conducted by UMPD's Chief of Police, Crystal James. The second level involves appealing the outcome of the formal hearing and requesting a "final hearing" conducted by UMPD's Executive Director.

22. The appeal process for my clients has been initiated by submitting a formal trespass hearing request form via an online portal on the UMPD website. The form requires that the person provide a written statement of the reasons the trespass ban is being appealed; the request cannot be submitted without the written reason statement.

23. Following submission of the appeal request, a UMPD staff member reaches out via email to schedule a formal hearing. In my experience the hearing has been scheduled within a few weeks of the initial request.

24. The formal appeal hearings are conducted in a private meeting room at UMPD's offices on campus. The participants have been myself, my client, and Chief James,

---

[2] Based on my review of trespass citations issued to my clients, it appears that UMPD's trespass citation form—and specifically the description of the process for contesting and appealing the issuance of the trespass ban—was modified between November 17, 2023 and May 21, 2024. In this affidavit I will use the term "appeal" generally to refer to the process of contesting a trespass ban after it has been issued, including challenging the issuance of the ban, the grounds for the ban, the scope of the ban, and the duration of the ban.

[3] I have personally visited the UMPD website pages related to appealing a trespass citation, at https://www.dpss.umich.edu/content/about/compliments-or-complaints/ (for submitting compliments, complaints, or appeals for parking or trespass citations), and also at https://portal.dpss.umich.edu/public/trespass/ (for submitting trespass citation appeals). I last accessed the linked pages on Februaty 2, 2025.

5

with Chief James as the adjudicator. There has also been a second UMPD officer at each of the formal hearings I have attended, but they did not ask questions or have any type of speaking role. I am not aware of any recording or transcription of the hearing.

25. The formal appeal hearing is not adversarial in nature. No evidence, videos, records, or witnesses are made available for my clients to confront or challenge.

26. At the beginning of the formal appeal hearings that I have attended, Chief James has cautioned my client that anything that they say during the hearing could be used against them in legal proceedings. Given the University's consistent efforts to penalize pro-Palestine protesters in various forums, I advocated on my client's behalf in the hearings.

27. Chief James has generally opened the formal hearing by inviting my client and I to explain our position as to why the trespass ban in effect at the time should be lifted or modified. I have attended three formal appeal hearings with my clients, and in all three UMPD did not disclose any information regarding the specific grounds for issuing the trespass ban to my client, my client's alleged wrongdoing, or make any documents, videos, reports, or witnesses known or available to my client in connection with the appeal.

28. During each of the formal appeal hearings I have attended with my clients, I have explicitly asked Chief James to explain the specific grounds or basis for the officer's initial determination to issue the trespass citation to my client, and for specific allegations about the conduct of my client. Despite such requests, Chief James has not provided any explanation about the specific grounds for UMPD's issuance of a trespass ban to any of my clients, or details about the alleged conduct of any of my clients justifying the immediate deprivation of their rights to access campus.

29. In advance of the formal appeal hearing for one client's trespass ban, I submitted a written request to UMPD for the incident packet, and any videos, reports, or other materials related to the incident. In a response email, a UMPD officer informed me that, in connection with trespass appeal hearings, UMPD does not provide any incident packet or records related to the event. In the formal trespass hearings that I have attended, UMPD has not provided me with any records, reports, or videos in their possession related to the event, or otherwise discussed the contents of any evidence or records related to the event, during the formal hearing.

30. In none of the hearings has Chief James ever articulated any evidentiary or other standards that would be used to determine whether to modify or vacate my clients' trespass bans.

31. Following the formal hearings that I attended, I generally received a written letter from Chief James stating her decision and the outcome with respect to my client's trespass ban. For each of my clients, Chief James' decision and the outcome as to

their specific trespass ban was slightly different. None of the decision letters from Chief James provided any reasoning or explanation for her decision, any standards (evidentiary or otherwise) by which her decision was made, or any factors or evidence considered in reaching her decision.

**The Risk of Arbitrary Trespass Ban Extensions**

32. I have also advised or represented individuals that originally received trespass citations banning them from the Ruthven building in November 2023, and whose year-old trespass bans were summarily extended for an additional year without any explanation via a notice letter from Chief James. I am aware of at least 10 students who received these trespass ban extension letters, and have participated in the extension appeal process for two clients.

33. I have reviewed some of the trespass extension letters from Chief James and have spoken with other students that I had previously advised or represented. The trespass extension letters that I have reviewed stated that "[a]fter reviewing your trespass case, we have determined that you are not eligible to have your [trespass ban] lifted," and went on to notify the recipient that Chief James would again "review [their] status" on November 17, 2025. This suggests that the bans could be extended again, and does not indicate that there is any limitation on how many times a ban could be extended.

34. While the trespass extension letters from Chief James stated that the recipient could appeal directly to the UMPD Executive Director, the letter fails to state any evidence that was reviewed or the standards that were applied in determining whether to lift or extend the trespass ban.

35. I am aware that UMPD has a written policy regarding trespass bans, and potential trespass term extensions. I understand that, per the policy, following an annual review, if a trespass ban is not rescinded the extension notice must provide a written justification for the decision to continue the ban. The policy also provides that a trespass ban may be extended, upon review, for a number of years or indefinitely in one situation: that is, if a person "poses a long-term danger" to a University student, faculty, or staff member, or to members of the University community generally.

36. I represented a client that had received a trespass extension letter from Chief James related to the original Ruthven trespass ban, and attended a formal appeal hearing with Chief James related to the extension. Prior to the appeal hearing, another attorney representing the same client submitted a written request, citing the UMPD

7

policy, and asked for an explanation of the specific justification for extending the client's trespass ban, pointing out the lack of evidence or allegation that the person posed any type of credible long-term threat to the safety of any student, faculty, or staff member, or to members of the University community in general.

37. During the formal appeal hearing with Chief James regarding this extension, I also pointed out that there was no evidence or allegation that the person posed a credible long-term threat to any specific person or to University community members generally, and asked Chief James to explain any contention that the person posed the type of threat that would justify ongoing extensions of the trespass term beyond one year. Chief James did not provide any explanation, evidence, or justification that the person presented a credible threat of harm to any person or group. In a notice letter received from Chief James after the hearing, we were informed that the trespass ban extension was affirmed and would remain, with no further justification or explanation.

38. Given that the November 17, 2023 trespass bans are the first trespass bans issued to pro-Palestine protestors, I have concerns that the University will similarly extend, without explanation or justification, the one-year term of trespass bans that other clients received at later dates. I also have concerns, based on the extension appeal experience with one of my clients, that the appeal process will not allow pro-Palestine protesters to have their extensions removed. The annual extension could go on indefinitely, even where there is no evidence or allegation that the person presents a credible threat to any member of the University community.

8

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed February 2, 2025, in Ann Arbor, Michigan.

_____
Stacie Greskowiak McNulty