# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JONATHAN ZOU et al.,                )
                                    )
                    Plaintiffs,     )     Case No. 2:25-cv-10315
                                    )     Hon. Mark A. Goldsmith
        v.                          )     Mag. Elizabeth A. Stafford
                                    )
SANTA J. ONO et al.,                )
                                    )
                    Defendants.     )

---

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
# PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... ii

COUNTER-STATEMENT OF THE ISSUES PRESENTED ..................... vi

CONTROLLING OR MOST RELEVANT AUTHORITY ........................ vii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 3

    A.    The University's Trespass Policy Serves Vital Functions ........ 3

    B.    Plaintiffs Each Received Trespass Warnings In Response To Significant Violations Of University Policy And Michigan Law ......................................................................... 6

    C.    Plaintiffs Filed This Complaint And Seek Extraordinary Relief ..................................................................................... 10

STANDARD OF REVIEW ...................................................................... 11

ARGUMENT ........................................................................................... 12

I.    Plaintiffs Are Unlikely To Succeed On The Merits Of Their Claims ................................................................................. 12

    A.    Plaintiffs Are Unlikely To Prevail Under The First Amendment ........................................................................... 12

    B.    Plaintiffs Are Unlikely To Prevail Under Substantive Due Process ................................................................................... 18

    C.    Plaintiffs Are Unlikely To Prevail Under Procedural Due Process ................................................................................... 22

II.    The Remaining Factors Weigh Against Preliminary Injunctive Relief ..................................................................................... 28

CONCLUSION ........................................................................................ 30

i

## TABLE OF AUTHORITIES

*American Future Systems, Inc. v. Pennsylvania State University*, 752 F.2d 854 (3d Cir. 1984) .......................................................................... 13

*Bhattacharya v. Murray*, 93 F.4th 675 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 443 (2024).................................................................................... 24

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001)....................................... 11

*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006) .......................................... 13

*Brown v. Greene County Vocational School District Board of Education*, 717 F. Supp. 3d 689 (S.D. Ohio 2024) ................................. 29

*Caldwell v. University of New Mexico Board of Regents*, 679 F. Supp. 3d 1087 (D.N.M. 2023) ............................................................................ 27

*Cobb v. Yeutter*, 889 F.2d 724 (6th Cir. 1989) ............................................ 27

*Collins v. University of New Hampshire*, 664 F.3d 8 (1st Cir. 2011) ......... 24

*Cox v. Jackson*, 579 F. Supp. 2d 831 (E.D. Mich. 2008) ............................ 11

*Daily Services, LLC v. Valentino*, 756 F.3d 893 (6th Cir. 2014) ................ 22

*Davison v. Rose*, 19 F.4th 626 (4th Cir. 2021) ............................................ 24

*Does v. Whitmer*, No. 22-cv-10209, __ F. Supp. 3d __, 2024 WL 4340707 (E.D. Mich. Sept. 27, 2024)..................................................... 21

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004)............................................ 23

*Gilles v. Miller*, 501 F. Supp. 2d 939 (W.D. Ky. 2007) .............................. 13

*Grider v. Abramson*, 180 F.3d 739 (6th Cir. 1999)..................................... 13

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) .................. 18

*Hannemann v. Southern Door County School District*, 673 F.3d 746 (7th Cir. 2012) ................................................................................... 20, 21

*Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994) ............................23-24

*Henley v. Octorara Area School District*, 701 F. Supp. 545 (E.D. Pa. 1988) ................................................................................................. 26

*Higuchi International Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400 (6th Cir. 2024) ............................................................................................ 28

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) .................................... 15

*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002) ............... 19, 22

*Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020) .................................... 24

*Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010) .................... 19

*Kentucky v. Biden*, 57 F.4th 545 (6th Cir. 2023) ....................................... 29

*Knoblauch v. City of Warren*, 268 F. Supp. 2d 775 (E.D. Mich. 2003) ...... 25

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008) ................................... 19

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) .................................... 11

*Lexington H-L Services, Inc. v. Lexington-Fayette Urban County Government*, 879 F.3d 224 (6th Cir. 2018) ............................................ 14

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682 (6th Cir. 2014) ................ 12

*Lichtenstein v. Hargett*, 83 F.4th 575 (6th Cir. 2023) ......................12, 14-17

*Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) ..................................... 18

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) ............ 14, 16

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................... 24, 25

*McComas v. Board of Education Rock Hill Local School District*, No. 1:07-cv-573, 2009 WL 10679743 (S.D. Ohio Nov. 5, 2009), *aff'd in relevant part, rev'd in part*, 422 F. App'x 462 (6th Cir. 2011).............. 20

*McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012) ........................................ 28

*Occupy Nashville v. Haslam*, 769 F.3d 434 (6th Cir. 2014) ...................... 19

*Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566 (6th Cir. 2002) ................................................. 28

*Pierre v. University of Dayton*, 143 F. Supp. 3d 703 (S.D. Ohio 2015) ..... 29

*Reform America v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022) ............ 13

*Ritchie v. Coldwater Community School*, 947 F. Supp. 2d 791 (W.D. Mich. 2013) ............................................................ 20

*Rizzo v. Goode*, 423 U.S. 362 (1976) ......................................... 30

*Siders v. City of Brandon*, 123 F.4th 293 (5th Cir. 2024) .......................... 18

*Silvernail v. County of Kent*, 385 F.3d 601 (6th Cir. 2004) ....................... 23

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ......................................... 12

*Texas v. Johnson*, 491 U.S. 397 (1989) ........................................ 14

*Towerco 2013, LLC v. Berlin Township Board of Trustees*, 110 F.4th 870 (6th Cir. 2024) ................................................. 30

*United States v. Albertini*, 472 U.S. 675 (1985) .................................. 12, 14

*United States v. O'Brien*, 391 U.S. 367 (1968) ......................................... 12

*University of Texas v. Camenisch*, 451 U.S. 390 (1981) ............................ 11

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................. 17

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................ 19

*Williams v. Town of Greenburgh*, 535 F.3d 71 (2d Cir. 2008) .................... 20

*Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) ....................................... 29

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ............................................................. 11, 12

*Wright v. City of St. Petersburg*, No. 8:13-CV-2784, 2014 WL 7273946
　　(M.D. Fla. Dec. 19, 2014), *aff'd*, 833 F.3d 1291 (11th Cir. 2016)......... 17

*York Risk Services Group, Inc. v. Couture*, 787 F. App'x 301 (6th Cir.
　　2019) ..................................................................................................... 28

## <u>COUNTER-STATEMENT OF THE ISSUES PRESENTED</u>

1) Have Plaintiffs demonstrated a strong likelihood of success on their First Amendment claim?

2) Have Plaintiffs demonstrated a strong likelihood of success on their Fourteenth Amendment substantive due process claim?

3) Have Plaintiffs demonstrated a strong likelihood of success on their Fourteenth Amendment procedural due process claims?

4) Have Plaintiffs otherwise demonstrated that the extraordinary remedy of a preliminary injunction is warranted?

## **CONTROLLING OR MOST RELEVANT AUTHORITY**

U.S. Const. amend. I
U.S. Const. amend. XIV

### CASE LAW PERTAINING TO FIRST AMENDMENT CLAIM

*United States v. O'Brien*, 391 U.S. 367 (1968)
*United States v. Albertini*, 472 U.S. 675 (1985)
*Lichtenstein v. Hargett*, 83 F.4th 575 (6th Cir. 2023)
*Grider v. Abramson*, 180 F.3d 739 (6th Cir. 1999)
*Reform Am. v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022)
*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006)

### CASE LAW PERTAINING TO SUBSTANTIVE DUE PROCESS CLAIM

*Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010)
*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008)
*Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002)
*Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746 (7th Cir. 2012)
*Ritchie v. Coldwater Cmty. Sch.*, 947 F. Supp. 2d 791 (W.D. Mich. 2013)

### CASE LAW PERTAINING TO PROCEDURAL DUE PROCESS CLAIMS

*Mathews v. Eldridge*, 424 U.S. 319 (1976)
*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004)
*Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994)
*Bhattacharya v. Murray*, 93 F.4th 675 (4th Cir. 2024), *cert. denied*, 145 S.
    Ct. 443 (2024)
*Davison v. Rose*, 19 F.4th 626 (4th Cir. 2021)
*Cobb v. Yeutter*, 889 F.2d 724 (6th Cir. 1989)

## INTRODUCTION

This case challenges the application of the University of Michigan's longstanding trespass policy to disruptive, dangerous, and criminal conduct by five individuals. Contrary to Plaintiffs' claims, their trespass warnings had nothing to do with their viewpoint or speech: they were issued because of conduct including violent forced entry into a locked campus building, resisting and obstructing arrest, assaulting police officers, and defacing campus property. Plaintiffs seem stunned that they are facing consequences for their actions. But whatever their beliefs about the righteousness of their cause, their actions do have consequences; and neither law nor common sense requires universities to sacrifice their educational mission by tolerating conduct that jeopardizes campus safety and security or that seriously disrupts campus operations.

The University must protect the safety, security, and operations of its campus so that it remains an educational environment in which *all* students can learn and thrive. For that reason, the University—like institutions of higher education across the country—has enacted content- and viewpoint-neutral policies that promote safety and security and minimize substantial disruptions, like the trespass warning policy at issue here. The policy allows

the University to prohibit certain individuals—those who have engaged in criminal conduct against persons or property, violated University rules protecting health and safety, disrupted University functions, or posed a risk of physical harm—from entering University property for a period of time. This policy has been in place for decades, and it has several vital applications ranging from addressing vagrancy and larceny to protecting community members against assaults and bomb threats.

In this case, trained law enforcement officers with the University's Police Department reasonably determined that trespass warnings were justified based on Plaintiffs' disruptive, dangerous, and criminal conduct. The challenged warnings—which issued between May and October of 2024—were tailored to address that conduct, and where applicable they allowed access to campus for academic obligations and on-campus housing. Many months after receiving those warnings, Plaintiffs filed this lawsuit and now seek a preliminary injunction granting immediate and sweeping relief. They ask this Court to undo their trespass warnings and radically change the policy and procedure for issuing and reviewing such warnings going forward. But Plaintiffs cannot demonstrate the strong likelihood of success on the merits that this extraordinary relief demands. Trespass warnings are neutral

restrictions on conduct, and each challenged warning satisfies the standard that applies to their First Amendment claims. There is no infringement of a fundamental right, as their substantive due process theories require; and the policy governing the warnings satisfies procedural due process by providing for notice as well as three levels of review (which some Plaintiffs did not even exhaust before suing). Further, Plaintiffs have not shown irreparable harm; and the balance of interests weighs decisively in favor of the University given the burdens, costs, and impairment of campus safety and operations that the requested injunction would cause.

Plaintiffs' Motion is not a request to temporarily preserve the status quo. It seeks to completely rewrite a critical and established University policy. Plaintiffs come nowhere close to satisfying their heavy burden to justify that extraordinary intrusion into the University's public safety and educational functions.

## **BACKGROUND**

### A.    **The University's Trespass Policy Serves Vital Functions.**

Supporting students in their campus expression is a priority for the University. Ex. A, Decl. of Eddie Washington ¶¶ 6, 36; Ex. C, Decl. of Paul DeRidder ¶ 7; *see also* Decl. of Stacie Greskowiak McNulty, ECF No. 2-1 ¶

17, PageID.132 (referencing rich history of protest). The University's proud tradition of fostering debate is the product of sustained and deliberate efforts by leaders across the institution—including in the University's Division of Public Safety and Security ("DPSS") and Police Department ("UMPD")—to protect and promote this core value. Ex. A ¶¶ 7–12.

DPSS and UMPD approach policing with an overriding goal to advance the University's educational mission. When protests or demonstrations cross the line into conduct that violates University policies or Michigan law, the first response is to seek voluntary compliance. *Id.* ¶ 31. If that fails, UMPD officers consider other tools to diffuse the situation, maintain safety, and minimize disruption. One tool is issuing a "trespass warning," which is a statement imposing certain restrictions on access to University property and a warning that, if the recipient violates those restrictions, they may be arrested. *Id.* ¶¶ 16–17, 31. These warnings frequently allow UMPD officers to *avoid* resorting to arrest and criminal charges. They are governed by a University policy, Official Order No. 41 ("Trespass Policy"), which sets forth the grounds for issuing them and the procedures for challenging them. Ex. 1.

The Trespass Policy is not new; it has served an important role at the University for decades. Ex. A ¶ 15. It provides four circumstances that can

4

justify the issuance of a warning: where an individual (1) "[c]ommitted or is suspected of committing a crime against persons or property while on campus"; (2) "[r]efused or failed to comply with established University rules that protect the health and safety of persons or property"; (3) "[d]isrupted lawful operations and functions of the University"; or (4) "[d]emonstrated a risk of physical harm or injury to others or property." Ex. 1 § 4.A. A higher standard applies to faculty, students, and staff, requiring "extenuating circumstances" such as "posing an immediate threat to the safety of others." *Id.* § 4.B. Under this policy, warnings are issued in numerous contexts, including larceny, stalking, vagrancy, assault, and more. Ex. A ¶ 37; Ex. D, Decl. of Aron Feltes ¶ 9. The Trespass Policy is content-neutral and is applied across these and other contexts without any distinctions based on viewpoint or speech. Ex. A ¶ 36; Ex. D ¶¶ 8–10.

All warnings are accompanied by a robust process for review. They are issued through a written form that requires an officer to identify the reason for the warning and its geographic scope. Ex. 2; Ex. A ¶¶ 18–19. In addition, the written form provides notice of the warning's duration. Ex. 2. The warning then undergoes review by a shift supervisor "to ensure compliance with this policy," and the shift supervisor is empowered to recommend lifting or

modifying a warning. Ex. 1 § 5.D.3; Ex. C ¶ 10. In addition, the recipient of a trespass warning may request a hearing, Ex. 1 § 8; Ex. B, Decl. of Crystal James ¶¶ 6–12, as well as an appeal from the outcome of that hearing, Ex. 1 § 9; Ex. B ¶ 13; Ex. A ¶¶ 25, 27–29. Recipients are notified of the hearing and appeal process on the written trespass from itself. Ex. 2 at 2. Finally, trespass warnings must be reviewed annually for "possible rescission or modification," and "[n]otice of the decision to extend the trespass warning must be sent to the individual, if possible, including the right to a trespass hearing for a negative decision." Ex. 1 § 10.A.

### B.     Plaintiffs Each Received Trespass Warnings In Response To Significant Violations Of University Policy And Michigan Law.

This Motion was filed by three current and former University students and one non-affiliate.[1] Each received trespass warnings in the past year, based at least in part on suspected criminal activity. Moreover, criminal charges are pending—or felony criminal cases ongoing—against each Plaintiff *for conduct that contributed to the warning challenged here*. Ex. C ¶¶ 19, 25, 33, 38.

---

[1] Plaintiff Oliver Kozler did not join the Motion for Preliminary Injunction. Subsequent references in this brief to "Plaintiffs" refer to the four other Plaintiffs.

***Alice Elliott.*** Elliott, a former graduate student, received the challenged warning on August 28, 2024, for violently interfering with an arrest. Ex. 30; Ex. C ¶ 37; Ex. D ¶ 13. Specifically, when a UMPD officer attempted to arrest another individual on the University Diag, Elliott interfered by attempting to remove the officer's arms from that arrestee. Ex. D ¶ 13; Ex. 28. She was immediately arrested and given a trespass warning. Ex. D ¶ 13; Ex. 29. Although Elliott requested a formal hearing, she did not respond to multiple attempts to arrange the hearing, so it never took place. Ex. B ¶ 15; Ex. 5. Criminal charges against Elliott have been authorized by the Attorney General for Elliot's conduct, and that felony criminal case is ongoing. Ex. C ¶ 38.

Elliott had a history of disruptive and unlawful conduct predating the challenged warning. She was part of a group of demonstrators who occupied the Fleming Administration Building in 2019, and she was arrested for punching a demonstrator on University grounds in 2022. *Id.* ¶¶ 35–36.

***Gabriel Vieira.*** A former graduate student, Vieira received the challenged warning after an incident outside the Museum of Art on May 3, 2024. *Id.* ¶¶ 26–27; Ex. 24. A group of protestors surrounded a University Regent and his daughter outside the Museum and then attempted to force their way into the building during a private event. Ex. C ¶ 26. A standoff with law

enforcement lasted into the night, at which point law enforcement attempted to clear a path for those inside to leave. *Id.* Vieira repeatedly obstructed departing vehicle traffic, defying law enforcement orders. *Id.* ¶ 27; Ex. 22. He was arrested on the scene and given a trespass warning, which allowed Vieira to enter his student residence. Ex. C ¶ 27; Exs. 22, 23, 24. The warning was upheld after a hearing, and Vieira did not appeal. Ex. B ¶¶ 34–37; Ex. 9.

Vieira had a history of such conduct. On November 17, 2023, hundreds of people violently forced their way into the University's main administrative building, Ruthven, and refused to leave despite numerous orders by law enforcement. Ex. 20. Vieira was one of the most violent members of that mob, and he repeatedly assaulted officers during the struggle in the building. Ex. C ¶ 23; Ex. D ¶¶ 11–12; Ex. 20. The Washtenaw County Prosecutor's office has authorized felony criminal charges against Vieira for his conduct at Ruthven, and that criminal case is ongoing. Ex. C ¶ 25. Vieira received a trespass warning in connection with that event, too, which prevented him from entering Ruthven. *Id.*; Ex. 21. UMPD also learned that Vieira had smoke bombs he wanted to use at the Ruthven incident. Ex. C ¶ 24.

**Jonathan Zou.** A current student, Zou was first arrested and issued a trespass warning in connection with the Ruthven incident. Ex. C ¶ 14; Exs.

8

11–12. After that incident, Zou repeatedly participated in other disruptive and disorderly conduct, including the Museum of Art protest in May 2024 and the protest that shut down the University's March 2024 Honors Convocation. Ex. C ¶ 15; Exs. 13–15.

During a demonstration on October 7, 2024, Zou repeatedly raised a bullhorn into the faces of UMPD officers and yelled into it. Ex. C ¶¶ 16–17; Exs. 16–17. Despite being warned by a sergeant that the megaphone violated a noise ordinance, Zou continued. Exs. 16–17. As the sergeant moved to intervene, Zou resisted. *Id.* He was arrested and issued the challenged trespass warning, which was later modified to cover all three campuses. Ex. C ¶¶ 13, 18; Exs. 10, 16, 18, 19. After a hearing and appeal, the warning was amended to allow Zou's presence on campus to fulfill his academic obligations. Ex. A ¶¶ 40–42; Ex. B ¶ 23; Exs. 3, 7. Criminal charges against Zou for this conduct are currently pending review. Ex. C ¶ 19.

**Christian Grant.** Grant, who is not affiliated with the University, was identified—with photographic evidence—as the person who defaced Angell Hall with graffiti after an event there on September 20, 2024. *Id.* ¶¶ 30–31; Exs. 25, 27. Four days later, officers noticed Grant on campus, pulled him over in a traffic stop after he ran a red light, and issued him the challenged

warning. Ex. C ¶ 31; Ex. 26. The warning was upheld after the hearing and appeal process. Ex. B ¶¶ 24–30; Ex. 8; Ex. A ¶¶ 43–45; Ex. 4. Criminal charges against Grant are currently pending review. Ex. C ¶ 33.

### C.   Plaintiffs Filed This Complaint And Seek Extraordinary Relief.

Plaintiffs filed their Complaint and Motion for Preliminary Injunction on February 3, 2025. ECF Nos. 1 ("Compl."), PageID.1, 2 ("Mot."), PageID.93. The Complaint alleges constitutional violations under the First and Fourteenth Amendments. This Motion seeks relief for only a subset of the claims; it does not encompass the vagueness or overbreadth challenges. The sole evidence supporting the Motion is a single declaration from a lawyer who, based on representing four unnamed individuals in connection with trespass warnings, believes that such warnings have issued to "many pro-Palestine protesters"; involve deficient procedures; and "could go on indefinitely." McNulty Decl. ¶¶ 6, 9, 12, 38, PageID.130–131, 136.

Based on this threadbare evidence, Plaintiffs ask the Court to immediately enjoin the University from enforcing the trespass warnings issued to Plaintiffs. They also ask the Court to impose a new and different policy for *all* trespass warnings "that cover the entire campus or significant portions of it," limiting them to circumstances where (1) they are issued in

response to a significant threat of "imminent and recurrent physical harm";

(2) the recipient is provided with a hearing before the warning goes into effect;

(3) at that hearing, the recipient is provided with "all evidence and allegations

supporting the ban"; and (4) determination of whether the warning goes into

effect is made by a "neutral adjudicator." ECF No. 2 at 2, PageID.94.

## **STANDARD OF REVIEW**

A preliminary injunction is "an extraordinary remedy never awarded as

of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It "has

been characterized as one of the most drastic tools in the arsenal of judicial

remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (internal

quotation marks omitted). Preliminary injunctions that alter the status quo are

"particularly disfavored." *Cox v. Jackson*, 579 F. Supp. 2d 831, 855 n.8 (E.D.

Mich. 2008); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

To determine whether this extraordinary remedy is warranted, the Court

considers "(1) whether the movant has a 'strong' likelihood of success on the

merits; (2) whether the movant would otherwise suffer irreparable injury;

(3) whether issuance of a preliminary injunction would cause substantial harm

to others; and (4) whether the public interest would be served by issuance of

a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.

2000) (quotation marks omitted). Plaintiffs must establish each of these four factors and, on the whole, make a "clear showing" that they are entitled to relief. *Winter*, 555 U.S. at 20, 22.

## ARGUMENT

**I.    Plaintiffs Are Unlikely To Succeed On The Merits Of Their Claims.**

Plaintiffs fail to establish a "substantial likelihood or probability of success on the merits" of their claims. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689–90 (6th Cir. 2014) (internal quotation marks omitted).

### A.    Plaintiffs Are Unlikely To Prevail Under The First Amendment.

"[T]he First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). Indeed, "[t]he Supreme Court has never applied exacting free-speech scrutiny to laws that bar conduct based on the harm that the conduct causes apart from the message it conveys." *Lichtenstein v. Hargett*, 83 F.4th 575, 583 (6th Cir. 2023). Instead, under the standard set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), neutral regulations of conduct that incidentally burden speech are permissible so long as they "promote[] a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S.

675, 689 (1985). The trespass warnings issued to Plaintiffs are content-neutral and regulate conduct. The *O'Brien* standard thus applies, and the trespass warnings easily satisfy it.

The University has significant—indeed, compelling—interests at stake, which Plaintiffs effectively concede by making no argument to the contrary. Those interests include maintaining public safety and security on its campuses. *See Grider v. Abramson*, 180 F.3d 739, 749 (6th Cir. 1999) (recognizing compelling interest in ensuring public safety and order); *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1149–50 (6th Cir. 2022) (same). Additionally, "[t]here can be no doubt that a public university has a significant interest in carrying out its educational mission." *Am. Future Sys., Inc. v. Pa. State Univ.*, 752 F.2d 854, 865 (3d Cir. 1984); *see Bowman v. White*, 444 F.3d 967, 980 (8th Cir. 2006) (recognizing significant interest in "protecting the educational experience of the students" "because an educated electorate is essential to the vitality of our democracy and a lack of proper education diminishes the value of our free speech rights"); *Gilles v. Miller*, 501 F. Supp. 2d 939, 949 (W.D. Ky. 2007) (relying on *Bowman*). The Trespass Policy's express purposes incorporate these judicially recognized interests. Ex. 1 § 1.

These interests "would be achieved less effectively absent" the warnings. *Albertini*, 472 U.S. at 689. Under *O'Brien*'s "relatively lenient standard," *Texas v. Johnson*, 491 U.S. 397, 407 (1989), a regulation "need not be the least restrictive or least intrusive means" of pursuing the government interest. *Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cnty. Gov't*, 879 F.3d 224, 232 (6th Cir. 2018). Nor does its validity turn on whether the decisionmaker chose "the most appropriate method for promoting significant government interests." *Albertini*, 472 U.S. at 689. The question is only whether the regulation "further[s]" the interest at stake. *Lichtenstein*, 83 F.4th at 598 (citation omitted). Here, Plaintiffs each engaged in activity that threatened campus safety and security and was highly disruptive. *See supra* at 6–10. Because the compelling purposes behind the trespass warnings would not be achieved as effectively without the trespass warnings, Plaintiffs are unlikely to prevail.

To avoid this straightforward result, Plaintiffs claim that more exacting judicial scrutiny applies here, but their arguments are unavailing. Relying on *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994), Plaintiffs urge the higher standard that applies for content-neutral regulations imposed by a court-ordered injunction: that they "burden no more speech than

14

necessary to serve a significant government interest." Mot. 9–11, PageID.110–112 (quotation marks omitted). Plaintiffs rely principally on *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005), for the proposition that the *Madsen* standard applies here. But that case does not support their position: *Huminski* did not involve the application of a general regulation, but rather involved one-off trespass notices that were executed by a state court administrative office in coordination with state judges—making them substantially similar to a court-ordered injunction. *See id.* at 63–65. No governing precedent extends *Madsen* to the circumstances of this case, which involves application of a general policy, and the Court should decline Plaintiffs' invitation to break new ground in resolving this Motion.

Nor does strict scrutiny apply here, as Plaintiffs alternatively argue. Trespass warnings do not involve either of the circumstances in which government action that facially restricts only conduct can be subject to strict scrutiny on the ground that it indirectly targets expression: (1) where the government prohibits conduct based on the ideas being expressed; or (2) where the government restricts the "inputs" needed to express a message. *Lichtenstein*, 83 F.4th at 584–85. On the first point, Plaintiffs are unlikely to succeed on their claim that trespass warnings prohibit certain conduct based

on the expression involved. They offer only conclusory statements and unsupported allegations, *see* Compl. ¶ 69, ECF No. 1, PageID.21, which come nowhere close to meeting their evidentiary burden on this Motion. In fact, the evidence flatly refutes this unsubstantiated claim. Countless community members have expressed the views that Plaintiffs hold without receiving trespass warnings. *See* Ex. A ¶¶ 6–12, 36; Ex. D ¶¶ 8–10. The warnings challenged here had nothing to do with Plaintiffs' views and everything to do with their disruptive, dangerous, and criminal conduct. Plaintiffs seem to suggest they are immunized from the consequences of that conduct because they may have also engaged in protected expression at various times. That is not the law.

On the second point, Plaintiffs are unlikely to prevail in demonstrating that the trespass warnings burden their speech "by restricting [the] conduct that helps produce it." *Lichtenstein*, 83 F.4th at 587. Plaintiffs essentially argue that any burden on particular speakers qualifies for strict scrutiny because it could lead to "fewer voices" engaged in protected speech. Mot. 11, PageID.112 (quotation marks omitted). That position is plainly foreclosed by the very cases Plaintiffs cite elsewhere, *see, e.g.*, *Madsen*, 512 U.S. at 765, and it would cast doubt on countless time, place, and manner restrictions,

which are subject to intermediate scrutiny where they are content-neutral, *see Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989); *see also Lichtenstein*, 83 F.4th at 587 ("Plaintiffs' argument—that a ban on conduct triggers strict scrutiny if the ban makes it harder for an entity to achieve the policies it promotes—has no stopping point.").

In all events, the same result obtains regardless of the level of judicial scrutiny: Plaintiffs cannot demonstrate a likelihood of success on the merits of their First Amendment claim. Plaintiffs received their warnings after engaging in actions that disrupted the functions of the University, jeopardized safety and security, and involved suspected criminal activity—in many cases, after repeated and express warnings to stop. These actions presented a serious concern that Plaintiffs would persist in disruptive, dangerous, and even criminal activities on campus, requiring University officials to repeatedly intervene to protect the campus, its community, and its operations. In these circumstances, the scope and duration of the warnings were amply justified. *See Wright v. City of St. Petersburg*, No. 8:13-CV-2784, 2014 WL 7273946, at *2 (M.D. Fla. Dec. 19, 2014) (concluding that one-year trespass prohibition from public park for obstructing police officer was narrowly tailored to serve governmental interest of reducing unlawful activity), *aff'd*, 833 F.3d 1291

(11th Cir. 2016); *Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999) (concluding that trespass notice barring recipient from entering public school property did not even raise substantial federal question where plaintiff displayed "continuing pattern of verbal abuse and threatening behavior" (quotation marks omitted)); *see also Siders v. City of Brandon*, 123 F.4th 293, 306 (5th Cir. 2024) (concluding that regulation limiting protest activities at public amphitheater was narrowly tailored to serve governmental interest of public safety where individuals with two or more violations could be barred from entering the area at issue for a year).

## B. Plaintiffs Are Unlikely To Prevail Under Substantive Due Process.

Substantive due process claims generally "fall into one of two categories—claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that 'shock[s] the conscience.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012). Plaintiffs here allege only the former. They rest this claim on two putative constitutional guarantees: the right to remain in a public place of their choice, and the right to travel locally using public walkways and roads. *See* Mot. 15, PageID.116. Neither theory is likely to succeed on the merits.

*First*, there is no fundamental right to remain in a public place. Rights are fundamental when they are so "deeply rooted in this Nation's history and tradition" as to be "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quotation marks omitted). This is a high bar, and only a handful of rights are protected by substantive due process. Plaintiffs rely on *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010), conflating *liberty interests* recognized for purposes of procedural due process with *fundamental rights* recognized for purposes of substantive due process. These are not the same, *Lambert v. Hartman*, 517 F.3d 433, 444 (6th Cir. 2008), and indeed the Sixth Circuit has rejected the existence of a clearly defined "right to a continuous occupation" of public places for expressive activities, *Occupy Nashville v. Haslam*, 769 F.3d 434, 445 & n.21 (6th Cir. 2014).

Nor can Plaintiffs infer a fundamental right to remain in a public space from a right of movement more generally. *See* Mot. 18, PageID.119. The right of movement acknowledged in *Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002)—which is limited to the use of public walkways and roads— is far narrower than a sweeping fundamental right to plant oneself on public property anywhere. *Johnson* itself recognized that the right to local travel

"cannot conceivably imply the right to travel whenever, wherever and however one pleases." *Id.* at 502 n.9 (quotation marks omitted). Accordingly, Plaintiffs cannot demonstrate a likelihood of success on their theory about this purported fundamental right.

     ***Second***, for their theory about local travel, Plaintiffs cannot establish that the trespass warnings infringe on that right. *Johnson* established that state actors may not "broadly" restrict access to "public streets, sidewalks, and other public ways." 310 F.3d at 487, 503 (internal quotation marks omitted). But "the right to travel does not encompass the right to access particular government property." *Ritchie v. Coldwater Cmty. Sch.*, 947 F. Supp. 2d 791, 818 (W.D. Mich. 2013) (citing *Thompson v. Ashe*, 250 F.3d 399 (6th Cir. 2001)); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) ("[T]he right protects *movement between places* and has no bearing on *access* to a particular place."). Applying this principle, courts have recognized that the right to local travel does not apply to prohibitions on accessing school property, like the trespass warnings here. *See McComas v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, No. 07-cv-573, 2009 WL 10679743, at *15 (S.D. Ohio Nov. 5, 2009), *aff'd in relevant part, rev'd in part*, 422 F. App'x 462 (6th Cir. 2011); *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757–58 (7th

Cir. 2012) (relying on "the Supreme Court's . . . statements about the authority and the responsibility of school officials to protect students and control people on school property"). That is all the challenged warnings do: they limit access to specific government property.

Plaintiffs claim they are inconvenienced by the warnings in their travel around Ann Arbor, but that possibility does not demonstrate a likelihood of success on this claim. Plaintiffs do not and cannot "allege[] that the only way to get from one location to another is to traverse school property." *Hannemann*, 673 F.3d at 756. *Johnson* itself acknowledged that there is no "right to travel whenever, wherever and however one pleases," 310 F.3d at 502 n.9 (quotation marks omitted), and this Court has found *Johnson* inapplicable to mere inconveniences. *See Does v. Whitmer*, No. 22-cv-10209, __ F. Supp. 3d __, 2024 WL 4340707, at *26–28 (E.D. Mich. Sept. 27, 2024) (Goldsmith, J.). This case requires the same result, especially given that (1) variances are permitted and were granted here for academic obligations and on-campus housing; and (2) UMPD has never arrested for trespass on public

streets or sidewalks. *See Johnson*, 310 F.3d at 498, 505; *see supra* at 8–9; Ex. A ¶ 47.[2]

Finally, even if there were any infringement on a fundamental right (and there was not), Plaintiffs are unlikely to prevail under the strict-scrutiny standard that would apply. The trespass warnings were not "mete[d] out" to Plaintiffs without an individualized basis as prohibited by *Johnson*. 310 F.3d at 503. Rather, as discussed above, Plaintiffs' conduct amply demonstrated that they were "likely to engage in recidivist . . . activity." *Id.* In fact, many of them already had. *See supra* at 7–10. That conduct plainly justifies any purported infringement.

### C. Plaintiffs Are Unlikely To Prevail Under Procedural Due Process.

To establish a procedural due process claim, Plaintiffs must show that they (1) "had a life, liberty, or property interest protected by the Due Process Clause; (2) [were] deprived of this protected interest; and (3) the state did not afford [them] adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014). Even assuming the first and second elements

---

[2] Plaintiffs' reliance on *Johnson* is misplaced. Mot. 16, PageID.117. *Johnson* was a facial challenge, and the court ruled that the ordinance's variance procedure did not alleviate the *overall* burden imposed by the law. 310 F.3d at 505. Not so for the as-applied challenges at issue here.

for purposes of this Motion, Plaintiffs have not demonstrated a strong likelihood of success on the third. "The essential elements of due process are notice and an opportunity to be heard." *Silvernail v. Cnty. of Kent*, 385 F.3d 601, 604 (6th Cir. 2004). "Due process is a flexible concept, and the process required is context specific." *Id.* Here, no pre-deprivation hearing was required, and the post-deprivation process—supervisor review, a hearing, and an appeal—was adequate.

**First**, as a threshold issue, two Plaintiffs have waived any due process challenge by failing to take advantage of the processes available to them. *See Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). Plaintiff Elliott initially requested a hearing but did not respond to multiple attempts to arrange it. *See supra* at 7. Plaintiff Vieira received a hearing but never appealed the outcome. *See supra* at 8. They should not be permitted to obtain the extraordinary relief they seek in connection with their due process claims after failing to utilize these processes and protections.

**Second**, Plaintiffs are unlikely to prevail on their claim that the Constitution required a hearing *before* UMPD could issue a trespass warning. No such hearing is required in situations where it would be "impracticable," so long as the plaintiff later has an opportunity to be heard. *Harris v. City of*

*Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Applying this principle, multiple courts have rejected procedural challenges to campus no-trespass notices where the plaintiff posed an ongoing risk and could contest the ban after the fact. *See, e.g.*, *Bhattacharya v. Murray*, 93 F.4th 675, 702 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 443 (2024); *Davison v. Rose*, 19 F.4th 626, 642 (4th Cir. 2021); *Collins v. Univ. of N.H.*, 664 F.3d 8, 18 (1st Cir. 2011). So too here: Plaintiffs each posed an ongoing threat to campus safety and/or University operations, and each had access to ample post-deprivation process. The circumstances in which Plaintiffs were issued their warnings further highlight the impracticability of a pre-deprivation hearing: Plaintiffs Zou, Elliott, and Vieira were all issued their challenged warnings during the course of arrest and processing at the related campus incidents; and Grant, a non-affiliate, was issued his warning during a traffic stop shortly after he was identified as the suspect of a crime. Ex. C ¶¶ 17–18, 27, 31, 38.

The process afforded also satisfies *Mathews v. Eldridge*, 424 U.S. 319 (1976), which informs whether post-deprivation process is sufficient without a prior hearing. *See, e.g.*, *Johnson v. Morales*, 946 F.3d 911, 921–22 (6th Cir. 2020). That *Mathews* balancing test considers: (1) the private interest affected; (2) "the risk of an erroneous deprivation of such interest through the

24

procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 922 (quoting *Mathews*, 424 U.S. at 335).

Plaintiffs fail to substantiate a risk of erroneous deprivation here. Officers issued the warnings either in connection with arrests for ongoing criminal conduct or, in Grant's case, after positively identifying him as the individual who had engaged in such conduct; and the warnings provided notice of the violation(s) and a multi-level review process to challenge them. *See, e.g.*, *Knoblauch v. City of Warren*, 268 F. Supp. 2d 775, 781 (E.D. Mich. 2003) (concluding there was minimal risk of erroneous deprivation where plaintiff received notice of the violation, an opportunity to respond, and a post-deprivation grievance procedure). The risk of erroneous deprivation is also mitigated by the supervisor review process, which requires each trespass warning to be reviewed by the UMPD shift supervisor by the end of the shift to ensure compliance with the Trespass Policy. Ex. A ¶ 20; Ex. 1 § 5.D.3. In addition, the University's interests in maintaining campus safety and operations through trespass warnings is compelling, and pre-warning hearings

would place unwarranted administrative burdens on the University and its police force. *See, e.g.*, *Henley v. Octorara Area Sch. Dist.*, 701 F. Supp. 545, 551 (E.D. Pa. 1988) (explaining that "[i]mposing any greater procedural or administrative burdens on the [school] . . . would be fiscally and administratively burdensome" and "would undermine the ability of school officials to take prompt action to protect the student body").

*Third*, the post-deprivation process afforded was sufficient, providing both notice and opportunity to be heard. Each trespass warning at issue marked the grounds on which the warning was issued; identified the areas of campus covered; stated its duration; and detailed the rights to a hearing and an appeal. Exs. 10, 18, 24, 26, 30. Plaintiffs were thus provided with notice of the grounds for each warning and the process to challenge it. The evidence here in fact demonstrates that the post-deprivation process is meaningful: Zou's trespass warning was modified during these stages to address his academic obligations. Ex. 3.

Plaintiffs contend that they received constitutionally insufficient process because they were not provided adequate notice or an impartial adjudicator. The first argument is belied by the trespass warnings themselves, which provide the grounds for each warning. Exs. 10, 18, 24, 26, 30. Due

26

process does not require more detailed notice of the allegations against Plaintiffs in this context. *See Caldwell v. Univ. of N.M. Bd. of Regents*, 679 F. Supp. 3d 1087, 1171–72 (D.N.M. 2023) (rejecting similar argument by student barred from campus). Moreover, given that all the Plaintiffs were issued their challenged warnings right after being arrested for the conduct at issue—or, in Grant's case, after he was positively identified as the person who had engaged in the conduct at issue—it strains credulity to contend they were unaware of the grounds for their warnings.

Nor is the post-deprivation process "biased" simply because it is overseen by other officials within UMPD and DPSS. Mot. 24, PageID.125. The hearings and appeals are conducted at the highest levels of UMPD and DPSS, respectively; and Plaintiffs offer nothing but rank speculation that the Chief of Police or Executive Director of DPSS are biased against the very students they serve. "[O]ne claiming bias in administrative adjudication procedures has a heavy burden to shoulder." *See, e.g.*, *Cobb v. Yeutter*, 889 F.2d 724, 730 (6th Cir. 1989). Plaintiffs do not meet this burden, and if their speculation were enough, it would cast doubt on countless governmental review processes where "the same agency will necessarily serve both as prosecutor and as judge." *Id*.

## II. The Remaining Factors Weigh Against Preliminary Injunctive Relief.

Significant likelihood of success on the merits is a key factor for granting a preliminary injunction, and Plaintiffs have not met their burden. *See Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 409 (6th Cir. 2024). The remaining factors also weigh decisively against awarding this relief.

Plaintiffs cannot show irreparable harm. They rely solely on the merits of their claims to establish this factor, *see* Mot. 24–25, PageID.125–126, but because they have not demonstrated substantial likelihood of success, irreparable harm cannot be presumed. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Plaintiffs offer no other argument and thus fail to shoulder their burden. *See McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). At any rate, Plaintiffs cannot seriously claim irreparable harm requiring immediate relief after waiting between four and nine months after the trespass warnings issued to bring this lawsuit and seek this remedy. *See York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 309 (6th Cir. 2019) ("[A] lengthy delay in seeking injunctive relief may weigh against a finding of irreparable harm[.]").

The University—and, by extension, the public—would face substantial harm if the requested injunction were granted. The substantial-harm-to-others and public-interest factors "merge when the government is the defendant." *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023). Here, they require consideration of the important reasons the challenged warnings issued, including to promote public safety and maintain University operations. These interests weigh heavily in the balance of equities. *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829, 845 (6th Cir. 2020) ("public safety"); *Brown v. Greene Cnty. Vocational Sch. Dist. Bd. of Educ.*, 717 F. Supp. 3d 689, 696 (S.D. Ohio 2024) ("school safety"); *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015) ("atmosphere conducive to study and learning for all students").

Moreover, an injunction requiring the University to immediately adopt and implement an entirely new procedure for trespass warnings—a system with vital applications unrelated to its uses for disruptive or unlawful "protest" activity—would impose serious costs. *See* Ex. A ¶¶ 37–39; Ex. D ¶ 9; *Kentucky*, 57 F.4th at 556 (recognizing state's compliance burdens in balance of equities). The radical and onerous change involved in, for instance, providing a pre-deprivation hearing for hundreds of trespass warnings every year is fundamentally inconsistent with the recognized role of a preliminary

29

injunction in "preserv[ing] the status quo until trial." *Towerco 2013, LLC v. Berlin Twp. Bd. of Trs.*, 110 F.4th 870, 879 (6th Cir. 2024) (quotation marks omitted); *see* Ex. A ¶ 38. It is also inconsistent with core principles of federalism: the Supreme Court has rejected arguments that federal courts have the power to "supervise the functioning of [a] police department" through burdensome injunctive relief given the values of "equity, comity, and federalism" that forbid federal superintendence of state functions. *Rizzo v. Goode*, 423 U.S. 362, 379–80 (1976) (quotation marks omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied.

Date: March 12, 2025                    Respectfully submitted,

                                        */s/* Lauren J. Hartz
Brian M. Schwartz (P69018)              Lauren J. Hartz (D.C. Bar No.
Erika L. Giroux (P81998)                   1029864)
Miller, Canfield, Paddock               Ishan Bhabha (D.C. Bar No.
and Stone, P.L.C.                          1015673)
150 W. Jefferson, Ste. 2500             Jenner & Block LLP
Detroit, MI 48226                       1099 New York Avenue, NW Suite
(313) 963-6420                             900
schwartzb@millercanfield.com            Washington, DC 20001-4412
giroux@millercanfield.com               +1 202 639 6000
                                        lhartz@jenner.com
                                        ibhabha@jenner.com

                                        *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2025, I electronically filed the foregoing Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.


By:_____/s/ Lauren J. Hartz_____

## <u>LOCAL RULE CERTIFICATION</u>

LOCAL RULE CERTIFICATION: I, Lauren J. Hartz, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length in accordance with Local Rule 7.1(d)(3) and the Stipulated Order Regarding Page Limits for Response and Reply Briefs, ECF No. 20.

By:_____/s/ Lauren J. Hartz_____