UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN ZOU, et al.,

   Plaintiffs,         Case No. 25-cv-10315

v.

              HON. MARK A. GOLDSMITH

DOMENICO GRASSO,[1] et al.,

   Defendants.

_____/

## ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (Dkt. 2)

Before the Court is Plaintiffs' motion for a preliminary injunction. Defendants responded to the motion, Resp. (Dkt. 21), and Plaintiffs filed a reply brief, Reply (Dkt. 22). The Court held oral argument on the motion on May 15, 2025. 5/15/25 Tr. (Dkt. 32). For the reasons set forth below, the Court denies the motion without prejudice.

Three of the Plaintiffs—Jonathan Zou, Alice Elliott, and Christian Grant— participated in protest activity at the University of Michigan in 2024.[2] Compl. ¶ 2 (Dkt. 1). Plaintiffs allege that

---

[1] Defendants Santa Ono and Eddie Washington, who were both sued in their official capacities only, have left their positions at the University of Michigan. Under Federal Rule of Civil Procedure 25(d), their successors, Domenico Grasso and Richard Arnold, respectively, are automatically substituted as parties.

[2] The original Plaintiffs were Jonathan Zou, Oliver Kozler, Alice Elliott, Christian Grant, and Gabriel Viera. Compl. (Dkt. 1). Only Zou, Elliott, Grant, and Viera moved for a preliminary injunction. Mot. (Dkt. 2). On August 20, 2025, Viera filed a notice of voluntary dismissal. (Dkt. 42).

On August 27, 2025, Plaintiffs filed an amended complaint, in which they added two new Plaintiffs: Emily Wall and Rowan Tucker-Meyer. Amd. Compl. at PageID.725 (Dkt. 45). Id. These new parties and additional allegations pertaining to them do not impact the ruling and reasoning set out in the instant Order.

the University has "banned" each of them "from the entire University of Michigan Ann Arbor campus—and some from all three of the University's campuses"—after they participated in a campus protest. Id. at ¶ 4. They seek a preliminary injunction prohibiting Defendants from:

> (1) enforcing, authorizing others to enforce, or otherwise carrying out the trespass bans issued to Plaintiffs; and
>
> (2) issuing or authorizing others to issue any future trespass bans that cover the entire campus or significant portion of it unless (1) they are issued in response to conduct that poses a convincing, demonstrable, and significant threat of imminent and recurrent physical harm if a ban is not imposed; and (2) Defendants provide the accused with a hearing *before* the trespass ban goes into effect at which all evidence and allegations supporting the ban must be provided to the accused and the determination of whether the ban should be implemented is made by a neutral adjudicator who has not communicated with the accusing police officers on an ex parte basis in advance.[3]

Mot. at PageID.94 (Dkt. 2) (emphasis in original). Plaintiffs' preliminary injunction motion argues that the University of Michigan's trespass policy, as applied to Plaintiffs, violates their First Amendment, substantive due process, and procedural due process rights. Mot. at PageID.93–94, 100, 109–125.

As made evident in their briefs and at the oral argument, the parties dispute multiple questions of fact related to whether the trespass warnings as issued to Zou, Elliott, and Grant pass constitutional muster. Most, if not all, of the issues they present require further development of the factual record before the Court can rule on them. This is especially true given that the claims embody as-applied challenges.

---

[3] Plaintiffs use the phrase "trespass bans" in their filings, referring to a document entitled "University of Michigan Trespass Warning." See Dkt. 1-4. The parties do not dispute that the University issued such warnings to each Plaintiff under its trespass policy, which authorizes the University of Michigan Police Department to issue such warnings under certain circumstances. See Trespass Policy at PageID.66–70 (Dkt. 1-3).

Looking at the facts pertaining to just one of the Plaintiffs, Zou, demonstrates how divergent the parties are in their version of the events.  Plaintiffs argue that Zou, when he was a second-year undergraduate student residing in Ann Arbor in the fall of 2024, received a trespass warning after he participated in a march.  Id. at ¶ 76.  At the march, Zou acted as a "protest marshal," which Plaintiffs explain means he helped lead other protestors in marching around campus.  Id. at ¶¶ 76–77.  He used a megaphone for about 45 minutes without issue, but later was confronted by University police and instructed to stop.  Id. at ¶¶ 77–78.  Zou promptly complied, but when he tried using the megaphone again, officers wrestled him to the ground, handcuffed him, and transported him by a police car to the police department, whereupon he was photographed, fingerprinted, released, and received a trespass warning.  Id. ¶¶ 77–80.

Defendants present a much different picture of the events involving Zou.  They argue that Zou first came to the University's attention during his freshman year when, on November 29, 2023—almost a year before Zou received the trespass ban at issue in this case—"hundreds of people violently forced their way into" the Ruthven administrative building and refused to leave, despite law enforcement orders.  Resp. at PageID.211–212.  Zou was one of 40 people arrested for occupying the Ruthven building.  Decl. of Paul DeRidder at PageID.289–290 (Dkt. 21-4).[4]  Zou was issued a trespass warning specific to that building.  Id. at PageID.290.  Later, on October 7, 2024, the University issued the trespass warning Zou challenges in this case.  On that day, during Zou's sophomore year, Zou was part of a group of individuals that gathered on the U-M "Diag."  Zou repeatedly raised a bullhorn and yelled into it, with the bullhorn pointing at the faces of law enforcement officers.  Id. at PageID.290–291.  Officers warned Zou that he was violating a noise

---

[4] DeRidder, whose declaration (Dkt. 21-4) is attached as Exhibit C to Defendants' response brief, is the deputy chief of police in charge of operations at the University of Michigan's Ann Arbor campus.  He provided a description of events regarding Zou and others.

ordinance, which Zou disregarded.  Id.  They also argue that Zou resisted when an officer attempted to move Zou away from the crowd to address his conduct.  Id.  Zou was issued a trespass warning after this incident, which covered the full Ann Arbor campus.  Id. at PageID.291. Additionally, they argue that Zou participated in a protest that aimed to "shut down" the University's March 2024 Honors Convocation and another protest involving a group of people surrounding the Museum of Art during a closed event for the University Regents.  Id. at PageID.289–290.

The facts alleged by Elliott and Grant are similarly very different from the facts that the University alleges led to the issuance of their trespass warnings.[5]

Each of these differing versions of the circumstances surrounding the University's issuance of Plaintiffs' trespass warnings could impact the outcome of their claims.  With dramatically different factual positions, it would be premature for the Court to make a determination on the significant legal questions presented in the Plaintiffs' preliminary injunction motion.

Another key factual area that impacts all Plaintiffs' claims concerns what process each Plaintiff was afforded after the University issued each of them a trespass warning.  For example, Defendants argue that, after Elliott received her trespass warning, she requested a formal hearing

---

[5] Elliott, Plaintiffs argue, "was issued a trespass ban on August 28, 2024, after attending a protest at which UMPD officers arrested her when she attempted to offer medical assistance to a protestor who had been tackled by a police officer."  Mot. at PageID.106.  Defendants argue that, during a "die in" demonstration in which Elliott participated, she "attempted to interfere…repeatedly with the arrest of a demonstrator by trying to "pull one of the officer's arms off" of the arrestee.  Decl. of Paul DeRidder, at PageID.296.

Grant, Plaintiffs argue, attended a protest on September 24, 2024, and, after that protest had ended, was pulled over in his car for allegedly running a red light.  Decl. of Paul DeRidder, at PageID.107. He was issued a trespass warning during the traffic stop.  Id.  Defendants argue that Grant was photographed defacing Angell Hall with red chalk following an event on the steps of that building. Decl. of Paul DeRidder at PageID.295.  Days later, an officer identified Grant from the photograph, pulled him over for a traffic citation, and issued him a trespass warning.  Id.

but then failed to respond to the University's multiple attempts to arrange for it to occur.  Resp. at PageID.210.  Whether and how each Plaintiff engaged with the appeal process, and what that process involved, are key questions that require further factual development before the Court can evaluate Plaintiffs' due process arguments.

In sum, Plaintiffs allege potentially significant limitations imposed on them by the trespass warnings while Defendants describe potentially significant interests in maintaining campus safety and orderly operations of an extensive academic and research setting.  The Court finds it prudent in this case to allow the parties the opportunity to develop the facts that they consider material to Plaintiffs' claims before the Court rules on them.

In doing so, the Court follows other court decisions counseling that, in appropriate circumstances, it may be prudent to defer consideration of issues raised by a motion for a preliminary injunction until further factual and legal development can fully explore the issues presented.  See Does v. Whitmer, No. 22-cv-10209, 2022 WL 22967967 (E.D. Mich. Sept. 15, 2022) (denying without prejudice motion for preliminary injunction challenging Michigan's sex offender registration system to "allow the parties the opportunity to develop the facts that they consider material to Plaintiffs' claims before ruling on those claims"); Rouse v. Trump, No. 20-cv-12308, 2020 WL 6701899, at *3 (E.D. Mich. Nov. 13, 2020) (denying without prejudice motion for preliminary injunction challenging denial of right to hold religious services in a correctional facility, so that plaintiffs could pursue relief on a more "developed record"); Brown v. Lee, No. 3:20-cv-00916, 2022 WL 442036, at *7 (M.D. Tenn. Jan. 19, 2022), report and recommendation adopted, No. 3:20-cv-00916, 2022 WL 433315 (M.D. Tenn. Feb. 11, 2022) (denying without prejudice motion to preliminarily enjoin enforcement of Tennessee's sex offender registration

system where the court needed additional "evidence that adds substance . . . to the allegations made by plaintiff about the impact of the [statute] on his situation").

The prudence of deferring consideration until a full record can be developed is confirmed by noting that many of the cases that the parties cite in their briefs involved motions for summary judgment, where courts had the benefit of a more fully developed record.  See, e.g., Cyr v. Addison Rutland Supervisory Union, 560 F. Supp. 3d 536 (D. Vt. 2014); Reform Am. v. City of Detroit, 37 F.4th 1138 (6th Cir. 2022); Johnson v. City of Cincinnati, 310 F.3d 484 (6th Cir. 2002); Kennedy v. City of Cincinnati, 595 F.3d 327 (6th Cir. 2010); Farhat v. Jopke, 370 F.3d 580 (6th Cir. 2004).

Because the Court appreciated the need for both dispatch and thoroughness in deciding the issues presented in this case, it  held a conference with counsel on July 17, 2025, advising them of the Court's inclination not to decide these issues in the posture of a preliminary injunction motion, but rather to allow for accelerated discovery, summary judgment practice, and trial to flesh out all issues.  After receiving input from the parties, a case management schedule was adopted, so this case may move forward promptly.  See 8/12/25 Case Management and Scheduling Order (Dkt. 41).

## CONCLUSION

For the above reasons, Plaintiffs' motion for preliminary injunction (Dkt. 2) is denied without prejudice.

**SO ORDERED.**

Dated: September 29, 2025
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2025.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager